UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

James Cyrus,                                                Case No. 3:20-cv-2287

                   Plaintiff,

v.                                                    MEMORANDUM OPINION
                                                          AND ORDER

Gregory Postel, *et al.*,

                   Defendants.

## I. INTRODUCTION

Defendants the University of Toledo and Dr. Gregory Postel (the "UT Defendants"), and Defendant Opportunities for Ohioans with Disabilities ("OOD"), (collectively, "Defendants"), have filed motions to dismiss the claims presented by Plaintiff James Cyrus. (Doc. Nos. 9 and 15). Cyrus opposes both motions. (Doc. No. 23). The UT Defendants and the OOD filed briefs in reply. (Doc. Nos. 28 and 29). Cyrus also filed a motion for leave to amend his complaint. (Doc. No. 24). The UT Defendants opposed that motion, (Doc. No. 25), and Cyrus filed a reply brief in support. (Doc. No. 30).

For the reasons stated below, I deny Cyrus' motion for leave and grant Defendants' motions to dismiss.

## II. BACKGROUND

Cyrus is a licensed blind vendor in the Business Enterprise program operated by the Bureau of Services for the Visually Impaired ("BSVI"), a division of the OOD. The BSVI is the designated

State of Ohio agency responsible for implementing the Randolph-Sheppard Act (the "RSA"), 28 U.S.C. § 107, *et seq.*, and a similar state law known as the Mini Randolph-Sheppard Act, Ohio Revised Code §§ 3304.28-3304.35 (the "Mini-RSA"). The RSA authorizes business owners who are blind to operate vending facilities on federal property, while the Mini-RSA gives blind vendors priority in operating vending facilities on state property.

The OOD negotiates Bureau Grantor Agreements with federal and state entities in order to establish blind vending facilities on or in property owned by the entities. The OOD also enters into Bureau Operator Agreements with vendors in order to establish the vendors' obligations with respect to those facilities. As a licensed vendor, Cyrus provides services pursuant to these Agreements at the Health Science Campus of the University of Toledo, where he has provided services since 1993 and where he currently is the sole licensed blind vendor.

In October 2018, pursuant to a Bureau Grantor Agreement entered into by the OOD and the University of Toledo in June 2018, Cyrus began operating the Market Café, at which he sold coffee, smoothies, sandwiches, and other food products, on the Health Science Campus. The spread of Covid-19 forced the cancellation of most classes as well as significant changes to hospital operations on the Health Science Campus, which Cyrus alleges resulted in severe financial losses throughout the spring and summer months. On August 27, 2020, Cyrus notified OOD and the University that he needed to close the Café to avoid continued losses. He indicates neither the OOD nor the University initially objected to the closure, and previously had offered their support in response to Cyrus' prior communications about the financial consequences of the pandemic. (Doc. No. 2-1 at 4-5).

On September 4, 2020, however, the University informed the OOD that the closure of the Café violated the 2018 Grantor Agreement; the OOD then notified Cyrus that the closure violated the Operator Agreement. (*Id.* at 37, 39). Cyrus did not re-open the Café as, in his view, the

2

restrictions imposed by the pandemic did not allow him to operate the Café without absorbing significant financial losses. (Doc. No. 1 at 7). On October 2, 2020, the University notified the OOD it was terminating its obligations under the Grantor Agreement, effective October 5, 2020, due to the OOD's failure to cure the alleged breach of the Grantor Agreement. (Doc. No. 2-1 at 52).

Cyrus had filed a grievance with the BSVI concerning the termination of the Grantor Agreement on September 18, 2020, and what Cyrus alleges to be violations of the RSA and Mini RSA through the University's "full[ ] subsid[ation]" of the University's cafeteria in direct competition with the Café. (*Id.* at 44). After receiving the University's termination notice, he initiated this litigation, asserting claims for violation of the RSA, the Mini-RSA, and his Fourteenth Amendment procedural due process rights, as well as state law claims for detrimental reliance and breach of contract. (Doc. No. 1.)

I granted Cyrus' motion for a temporary restraining order prohibiting all Defendants "from taking any further action to remove Cyrus as the operator of the Café and from removing any physical structure, equipment, or inventory that is part of the Café.," as well as from taking any further "action concerning the placement or recruitment of a vendor for the facility occupied by the Café." (Doc. No. 4 at 5). The parties agreed upon a schedule for limited discovery and briefing prior to and following a hearing on Cyrus' motion for a preliminary injunction. (*See* Doc. No. 10).

During this time, the UT Defendants and the OOD filed motions to dismiss, arguing this Court lacks subject matter jurisdiction over Cyrus' claims or, in the alternative, that Cyrus fails to state a claim upon which relief may be granted. After filing their motions to dismiss, all Defendants engaged in discovery and did not object to Cyrus' motion to extend the deadline for his response to the motions to dismiss until after the preliminary injunction hearing.

A few days before the scheduled hearing, however, the UT Defendants and the OOD filed motions in limine, seeking to exclude from the preliminary injunction hearing "any testimony and other evidence related to the merits of Plaintiff's federal and state law claims . . . over which this Court lacks subject matter jurisdiction." (Doc. No. 19 at 1); (*see also* Doc. No. 21 at 1). I postponed the preliminary injunction hearing to provide Cyrus with a fair opportunity to respond to the motions to dismiss. (Doc. No. 22).

In addition to filing a brief in opposition to the motions to dismiss, Cyrus seeks leave to amend his complaint to add Richard Swaine, Chief Executive Officer of the University of Toledo Medical Center, as a defendant in his official capacity. (Doc. No. 24). He asserts the UT Defendants identified Swaine as the official who made the decision to terminate the Bureau-Grantor Agreement covering the Café. The UT Defendants oppose the motion for leave, arguing Cyrus failed to articulate an appropriate basis for amendment and that any amendment would be futile. (Doc. No. 25).

### III.  STANDARD

Under Rule 12, a defendant may move for dismissal due to a lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Defendants may make offer "[a] facial attack on the subject-matter jurisdiction alleged in the complaint[, which] questions merely the sufficiency of the pleading. *Gentek Bldg. Prod., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007) (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). "When reviewing a facial attack, a district court takes the allegations in the complaint as true, which is a similar safeguard employed under [Rule] 12(b)(6) motions to dismiss." *Gentek*, 491 F.3d at 330 (citing *Ohio Nat'l Life*, 922 F.2d at 325).

A defendant may seek to dismiss a plaintiff's complaint on the ground the complaint fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). When ruling on a motion

to dismiss, a court construes the complaint in the light most favorable to the plaintiff and accepts as true well-pleaded factual allegations. *Daily Servs., LLC v. Valentino*, 756 F.3d 893, 896 (6th Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Factual allegations must be sufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 678. Legal conclusions and unwarranted factual inferences are not entitled to a presumption of truth. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### IV.   ANALYSIS

The UT Defendants and the OOD first argue this Court lacks subject matter jurisdiction to consider Cyrus' claims because they are barred by the doctrine of sovereign immunity.

The Eleventh Amendment prohibits a federal court from hearing a case brought against a state by one of its own citizens except in three circumstances: (1) "if the state waives its sovereign immunity," *In re Hood*, 319 F.3d 755, 760 (6th Cir. 2003) (citing *Hans v. Louisiana*, 134 U.S. 1, 10 (1890)); (2) "if Congress, acting pursuant to a valid constitutional authority, abrogates the state's sovereign immunity," *In re Hood*, 319 F.3d at 60, or (3) if a plaintiff seeks injunctive relief against a state official who allegedly is violating federal law. *Lawson v. Shelby Cnty, Tenn.*, 211 F.3d 331, 335 (6th Cir. 2000) (citing *Ex parte Young*, 209 U.S. 123 (1908)). Federal courts may not consider a plaintiff's claims that a state official has violated state law unless the one of the first two exceptions apply. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984).

While Cyrus contends sovereign immunity does not limit this Court's equitable power to take steps to protect its jurisdiction to review a final agency action, (Doc. No. 23 at 9), his carefully drawn arguments are not enough to draw his claims against UT and the OOD outside of the reach of the Eleventh Amendment.[1] By their nature, Cyrus' claims seek to restrain the courses of conduct

---

[1]  Cyrus maintains he does not seek a ruling on the underlying merits of his claims under the RSA, Mini-RSA, procedural due process clause, or Ohio law, but instead he "has invoked the jurisdiction

5

in which UT and the OOD may permissibly engage, and Cyrus has not shown Ohio has waived, or that Congress has abrogated, Ohio's sovereign immunity in this area.

Further, while the *Ex parte Young* exception would lift the Eleventh Amendment barrier as to the further entry of injunctive relief against Postel or Swaine (if Swaine were to be added as a party defendant), *see, e.g., League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 474 (6th Cir. 2008), I conclude the RSA's exhaustion requirement bars any likelihood of success on the merits of Cyrus' predicate claims. *See Kentucky v. U.S. ex rel. Hagel*, 759 F.3d 588, 599 (6th Cir. 2014). This claim-processing rule requires deference to the statutory mechanism of administrative review in the first instance. *Id.*

There are some circumstances in which a litigant may proceed with a claim under the RSA without first exhausting the administrative remedies: "(1) [if] requiring exhaustion will result in irreparable harm; (2) [if] the administrative remedy is wholly inadequate; or (3) [if] the administrative body is biased, making recourse to the agency futile." *Id.* (citation omitted). With the benefit of the parties' further briefing of this issue, I conclude Cyrus has not carried his burden of demonstrating that he would suffer irreparable harm without injunctive relief or that the administrative remedy is inadequate.[2]

In *Armstrong v. Michigan Bureau of Services for Blind Persons*, 969 F.3d 337 (6th Cir. 2020), the arbitration panel concluded the plaintiff had been wrongfully denied a contract which the RSA and implementing state regulations dictated should have been awarded to her. *Id.* at 339. The arbitrators ordered the State of Michigan to award her the specific contract that had been improperly denied. The trial court upheld the arbitration award and the Sixth Circuit affirmed. *Id.* at 340-43.

---

of the Court for the limited purpose of securing interim relief during the pendency of the administrative proceedings." (Doc. No. 23 at 5).

[2] Cyrus does not contend the arbitration panel is or would be biased.

The same circumstances are present here – if the arbitration panel concludes the Defendants improperly terminated the Grantor Agreement or the Operate Agreement, the panel will have an appropriate legal remedy at its disposal.  The RSA's dispute resolution scheme requires deference to the completion of the administrative process and Cyrus has not shown an injunction is necessary for the vindication of his rights protected by that administrative process.

### V. CONCLUSION

For the reasons stated above, I conclude the doctrine of sovereign immunity bars Cyrus' claims for injunctive relief against the University of Toledo and the OOD, and that he has not established a right to injunctive relief against any individual state defendant.  I grant Defendants' motions to dismiss, (Doc. Nos. 9 and 15), and dismiss Cyrus' claims against the University of Toledo and the OOD for lack of subject matter jurisdiction and dismiss his claims against Postel as unexhausted.  I deny Cyrus' motion for leave to amend his complaint, (Doc. No. 24), as futile.

I vacate my October 28, 2020 order granting Cyrus' motion for a temporary restraining order.  (Doc. No. 4).  Finally, I deny Defendants' motions in limine, (Doc. Nos. 19 and 21), as moot.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge
